**Donald Bruce SONDERGARD, Appellant,**

v.

**MILES, INC., Appellee.**

**No. 92–1274.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1992.

Decided Feb. 22, 1993.

Glen H. Johnson, Rapid City, SD, argued (Wayne F. Gilbert, Rapid City, SD, and Paul D. Rheingold, New York City, on the brief), for appellant.

Donald E. Shely, Detroit, MI, argued (William G. Porter and Patricia A. Meyers, Rapid City, SD, and Susan Artinian, Daniel J. Stephenson and Marie R. Deveney, Detroit, MI, on the brief), for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and VAN SICKLE,* Senior District Judge.

MAGILL, Circuit Judge.

Our task in this diversity of citizenship case is to consider the novel question whether the South Dakota courts would exercise personal jurisdiction over a foreign corporation based upon service of process on that corporation's registered agent, even though the cause of action arose outside the state before the corporation appointed the agent. South Dakota courts have not considered this precise question, and we can find no others that have. We believe, however, that South Dakota would accept jurisdiction over such a case, and that such jurisdiction would comply with the dictates of the due process clause. Therefore, we reverse.

## I. FACTS

This products liability action comes to us on admitted facts. Appellant Donald Sondergard alleges that on October 27, 1989, he consumed Alka–Seltzer Plus cold medicine, which is manufactured by the appellee, Miles, Incorporated. Sondergard claims that the Alka–Seltzer Plus reacted chemically with the prescription drug Nardil, causing a hypertensive crisis resulting in a stroke. At the time he consumed the Alka–Seltzer Plus, Sondergard was a resident of Utah.

Miles, Incorporated, is an Indiana chartered corporation with its principal place of business in Pittsburgh, Pennsylvania. Miles produces Alka–Seltzer Plus at its Elkhart, Indiana, division. At the time Sondergard consumed Alka–Seltzer Plus, Miles sold the product in all fifty states.

Miles had not at that time either registered to transact business as a foreign corporation in South Dakota or appointed an agent for service of process in South Dakota.

Two subsequent events give rise to the issue presented in this case. First, Sondergard moved from Utah to South Dakota. Second, Miles applied to the South Dakota Secretary of State for a Certificate of Authority to "do or engage in" business as a foreign corporation in South Dakota, and was granted such authority on August 30, 1991. On or about the same date, Miles appointed CT Corporation System as its registered agent for service of process in South Dakota.

Sondergard commenced the instant lawsuit in the Seventh Judicial Circuit Court, Pennington County, South Dakota, on October 9, 1991, by serving process upon CT. On November 6, 1991, Miles removed the case to the United States District Court for the District of South Dakota, Western Division, and on the same day moved to dismiss for lack of personal jurisdiction. The district court heard oral argument and granted the motion to dismiss on January 10, 1992. On January 15, 1992, Sondergard filed a motion requesting the court to reconsider its decision or in the alternative to stay its order pending limited discovery. The court denied this motion on January 24, 1992, and entered an order dismissing the case without prejudice. This appeal followed.

## II. DISCUSSION

### A. South Dakota Jurisdiction

■ South Dakota requires that foreign corporations seeking to "do or engage in any business"[1] in South Dakota register as

---

\* THE HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. South Dakota requires that a foreign corporation engage in significant *intrastate* activities before such certificate is required. A non-exhaustive list of activities not requiring such a certificate include:

 (1) Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes;

 (2) Holding meetings of its directors or shareholders or carrying on other activities concerning its internal affairs;

 (3) Maintaining bank accounts;

 (4) Maintaining offices or agencies for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositories with relation to its securities;

 (5) Effecting sales through independent contractors;

 (6) Soliciting or procuring orders, whether by mail or through employees or agents or other-

a foreign corporation with the secretary of state, and, *inter alia,* appoint a registered agent to accept process. S.D.Codified Laws §§ 47–8–1, 47–8–1.1, 47–8–11 (1991). The question we must consider is whether such appointment renders the corporation amenable to the personal jurisdiction of South Dakota's courts on any cause of action.

█ The analysis of personal jurisdiction questions involves two steps. We first must consider whether the state in question would accept jurisdiction under the circumstances. Then we must determine whether that exercise of jurisdiction comports with due process restrictions. *Dakota Indus. v. Dakota Sportswear,* 946 F.2d 1384, 1387–88 (8th Cir.1991). We examine these questions in turn.

The Supreme Court has held that states exercise two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. *Id.* at 414, 104 S.Ct. at 1872. General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415, 104 S.Ct. at 1872.

█ Miles argues correctly that South Dakota would not exercise specific jurisdiction in this case, as none of the actions complained of occurred within or had any connection to South Dakota. Thus, we must examine whether South Dakota has authorized the exercise of general jurisdiction over non-resident corporations, and whether it would apply the doctrine in this case.

The South Dakota Supreme Court has not held that the doctrine of general jurisdiction extends to all non-resident corporations. It has, however, discussed the issue in a more limited setting on two occasions. In *Thomson v. Meridian Life Ins. Co.,* 38 S.D. 570, 162 N.W. 373 (1917), the South Dakota Supreme Court held that personal service upon the South Dakota insurance commissioner established valid personal jurisdiction over an insurance company registered to do business in the state even though the policy was issued and the death occurred outside the state. When considering the question of jurisdiction over the out-of-state insurance corporation, the court stated: "But it seems to be the general policy of our law *to place individuals and foreign corporations coming into this state upon the same basis, so far as the right to sue them is concerned,* and it is our duty to give effect to that intent until the federal courts shall affirm or deny the constitutionality of such legislation." *Id.* 162 N.W. at 376 (emphasis added). The court also concluded that

[t]he weight of modern authority ... seems to support the proposition that a modern corporation may be sued on a transitory cause of action in any jurisdiction where it can be found in the sense that service may be perfected upon an agent or officer transacting business for the corporation within that jurisdiction, and that in the absence of statutory provisions to the contrary, the residence of the plaintiff and the place at which the cause of action arose are not material questions to be determined to maintain jurisdiction if the corporation can be found and served.

*Id.* The question whether such service in fact did confer jurisdiction, as opposed to whether it merely could, was a question of legislative intent, the court said. It found such an intent in the insurance statute, noting that the statute provided for service

---

wise, where such orders require acceptance without this state before becoming binding contracts;
(7) Creating evidences of debt, mortgages or liens on real or personal property;
(8) Securing or collecting debts or enforcing any rights in property securing the same;

(9) Transacting any business in interstate commerce;
(10) Conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature.
S.D.Codified Law § 47–8–1.1 (1991).

on the commissioner "with the same effect as if the company existed in this state." *Id.* at 375.

The South Dakota Supreme Court considered the same issue in 1985. *Sharkey v. Washington Nat'l Ins. Co.*, 373 N.W.2d 421 (S.D.1985). The court reaffirmed the *Thomson* view, noting that in *Thomson*, "[t]he court adopted the view that a corporation may be sued on a transitory cause of action in any jurisdiction in which it may be served with process, and that the residence of the plaintiff and the place at which the cause of action arose are immaterial to the question of jurisdiction." *Id.* at 425. The court's language concerning general jurisdiction is not limited solely to insurance companies, but includes all corporations.

 Miles initially contends that these cases are inapposite, as they apply only to insurance companies. We disagree. Miles confuses the question of whether the South Dakota courts would accept the doctrine of general jurisdiction with the question of whether service of process on the company's registered agent confers such general personal jurisdiction. *Thomson* and *Sharkey* are irrelevant to the latter question because the courts there considered a statutory scheme limited to insurance companies. The two cases are relevant, however, to the question whether South Dakota would adopt the doctrine of general jurisdiction for all corporations. The *Thomson* and *Sharkey* courts did adopt the doctrine of general jurisdiction, as they allowed the insurance companies to be sued on causes of action arising outside the state. Moreover, the language in these cases clearly extends beyond insurance corporations to include all corporations, and suggests that if the corporation could properly be served, the court would uphold jurisdiction over any cause of action. Given South Dakota's consistent trend of broadly construing its personal jurisdiction,[2] we believe that the South Dakota Supreme Court would hold

that the doctrine of general jurisdiction accepted for insurance companies in *Thomson* and *Sharkey* applies to all foreign corporations.

We now must consider whether the South Dakota legislature intended a foreign corporation's appointment of an agent for service of process to constitute submission to the general jurisdiction of the South Dakota courts. As *Thomson* and *Sharkey* put it, the question is whether the corporation "can be served" with process when the cause of action arose outside the state. We believe that the South Dakota legislature intended the authority of a foreign corporation's registered agent to accept process to extend to causes of action arising outside the state prior to the appointment of the agent.

We start with the backdrop provided by this court's decision in *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990). There, in considering the effect of a Minnesota statute requiring foreign corporations to appoint an agent for service of process,[3] the court stated that as a general rule, "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts. The effect of such a designation can be limited to claims arising out of in-state activities, and some statutes are so limited, but the Minnesota law contains no such limitation." *Id.* at 1199. Thus, this court has presumed that service upon a company's registered agent is sufficient to confer jurisdiction.

We believe that South Dakota intended service upon a foreign corporation's registered agent to be effective in these circumstances. South Dakota law provides that for foreign corporations:

> If the action be against a foreign private corporation, [delivery of process shall constitute personal service] on the president or other head of the corporation,

---

2. South Dakota has evidenced a clear policy to extend its jurisdiction to the extent allowed under the due process clause. *See State v. American Bankers Ins. Co.*, 374 N.W.2d 609, 612 (S.D. 1985); *Russell v. Balcom*, 328 N.W.2d 476, 479 (S.D.1983); John W. Larson, *In Personam Jurisdiction and the South Dakota Jurisdictional Statutes: A Basic Review and Update*, 31 S.D.L.Rev.

116 (1985) (South Dakota Supreme Court has consistently expanded its personal jurisdiction).

3. The statute in question provided: "A foreign corporation shall be subject to service of process ... by service upon its registered agent." Minn.Stat. § 303.13 subd. 1(1).

secretary, cashier, treasurer, a director or managing agent thereof; but such service can be made as to a foreign corporation only when it has property in this state or the cause of action arose therein, *or when such service shall be made within this state personally upon the president, treasurer, secretary, or authorized agent for the service of process.*

S.D.Codified Laws § 15–6–4(d)(2) (1991) (emphasis added).

■ We believe that this provision demonstrates two things. First, a foreign corporation's authorized agent can be served even if the cause of action arose outside the state. The statute provides that a personal service is effective as to a foreign corporation if, *inter alia*, service is made personally upon the corporation's authorized agent. It further suggests that such service is effective even if the cause of action arose outside the state. The three situations in which a foreign corporation can be served are stated in the disjunctive, which makes sense only if they each operate as independent bases to support valid service.

■ Second, service on a foreign corporation's properly authorized agent is sufficient to establish personal jurisdiction. Miles contends that this section refers only to manner of service, rather than amenability to it. Were the quoted sentence to end at the semicolon, we might agree. The first part of the sentence does in fact seem to deal with the "manner" of service. The limitation in the second clause concerning situations in which personal service "can be made," however, seems more logically to refer to limitations upon amenability to service, i.e., when service has its effect to confer jurisdiction.

The South Dakota Supreme Court confirms that it considers the latter portion of this section to be jurisdictional. In *Thomson,* the court used the identical provisions then in force to demonstrate its conclusion that "it seems to be the general policy of our law to place individuals and foreign corporations coming into this state upon the same basis, so far as the right to sue them is concerned." *Thomson,* 162 N.W. at 376. The context of the opinion clearly demonstrates that the South Dakota Supreme Court believed individuals would be subject to suit on any cause of action if personally served with process within the state. Equation of the requirements for service of process on a foreign corporation with the policy noted above thus makes sense only if such service conferred personal jurisdiction.[4] *Id.* at 376. To our knowledge, the South Dakota legislature has neither changed the language of the statute nor repudiated the *Thomson* holding.

We must then consider whether the process agent appointed by Miles has authority to receive process relating to causes of action accruing outside the state. The statute concerning this agent provides: "The registered agent appointed pursuant to § 47–8–11 by a foreign corporation authorized to do or engage in any business in this state shall be an agent of such corporation *upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served.*" S.D.Codified Laws § 47–8–15 (1991) (emphasis added). Like the statute construed in *Knowlton,* this statute does not limit the authority of the agent to accept service to causes of action arising within the state.

South Dakota has limited the authority of process agents in other contexts, howev-

---

4. The *Thomson* court first noted that § 885 of the South Dakota Civil Code provided that "service of process may be made upon the duly authorized agent in any action in which said corporation may be a party." It then noted, in relation to service of summons, that the statute provided, "[b]ut such service can be made in respect to a foreign corporation only when it has property in this state, or the cause of action arose therein, or when such service shall be made within this state personally upon the ... duly authorized agent thereof," and that "[s]er- vice made in any of the modes provided in this section shall be taken and held to be personal service." That the court believed that service in this manner conferred valid personal jurisdiction is confirmed both by its use as an example for the general proposition noted above, and by the court's further statement, immediately following, that "[w]e are *also* inclined to the view that the Legislature intended [the insurance appointment of service agent statute] *to cover transitory actions* accruing in another jurisdiction...." *Id.* at 376.

er. Prior to 1965, when the present provision concerning registered agents was adopted, South Dakota required a foreign corporation to " 'constitute[ ] and appoint[ ] the Secretary of State its true and lawful agent upon whom the summons, notices, pleadings, or process in any action or proceeding against it may be served in respect to any liability arising out of any business, contract, or transaction in the state....' " *Uhlich v. Hilton Mobile Homes*, 80 S.D. 478, 126 N.W.2d 813, 815 (1964) (quoting S.D.Codified Laws § 11.2003 (repealed 1965)). Thus, the prior provision specifically restricted the scope of the Secretary's agency to causes of action arising from the corporation's transactions within the state, even while the corporation was registered to transact business. Similarly, the present provision for withdrawal of authorization to do business as a foreign corporation provides that in order to secure a certificate of withdrawal, the corporation must, *inter alia:*

> revoke[ ] the authority of its registered agent in this state to accept service of process and *consent[ ]* that service of process in any action, suit or proceeding based upon any cause of action *arising in this state during the time the corporation was authorized to do or engage in any business in this state* may thereafter be made on such corporation by service thereof on the secretary of state.

S.D.Codified Laws § 47–8–23(4) (1991) (emphasis added). We believe our conclusion in *Knowlton* applies with equal force here: "These words of limitation ... clearly indicate that the Legislature knew how to limit the purposes of service of process when it wanted to do so, and that provisions for service of process without such an express limitation are intended to apply to any claims made against a corporation with a registered agent within the state." *Knowlton*, 900 F.2d at 1199.

Miles contends, however, that the limitation on the agent's authority presently exists within the provision that the agent may accept "any process, notice or demand required or permitted by law." Miles argues the phrase "required or permitted by law" means that the agent may validly be served with only such process for which there is an independent basis for personal jurisdiction, such as the long-arm statute. Sondergard argues, and we agree, that this language more naturally refers to the types of process "required or permitted" to be served in South Dakota. Because corporations may be served with process in a tort case, such as this one, such process is "permitted" by law. We cannot improve upon the words of Justice Stewart,[5] addressing the identical objection to an identically worded New Hampshire statute:

> In our view there is a more natural reading of the phrase 'process, notice or demand ... permitted by law' than that suggested by [the defendant]. We believe that the phrase merely refers to lawful process, notice or demand. Thus, because a summons and complaint in a tort action are documents that may be served on a corporation in accordance with the law, the service in this case falls within the term of the statute. Had the New Hampshire legislature wished to restrict the applicability of the provision to situations in which another statute created jurisdiction, it would hardly have expressed itself in so cryptic a fashion. There are many phrases that would communicate such a restriction far more clearly than the phrase 'process ... permitted by law.' We would be hesitant to attribute to the legislature so obscure a means of expressing itself as [the defendant] attributes to it, when a far more natural reading of the words is possible.

*Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir.1984).[6] Because Miles' agent was authorized under state law to accept process as to causes of action arising outside the state, and was personally served, jurisdiction should be established.

Miles further argues that none of this demonstrates an intent to subject a corporation to personal jurisdiction over causes of action arising before the appointment of

---

5. Justice Stewart was sitting by designation in the First Circuit.

6. In *Holloway*, the plaintiff asserted jurisdiction based upon personal service of the defendant's registered agent. This agent was appointed pur-

an agent for service of process. Again, we disagree. We first note that South Dakota has applied its jurisdictional statutes, specifically the long-arm provision in S.D.Codified Laws § 15–7–4, to causes of action arising before its passage. *See Johnson v. Kusel,* 298 N.W.2d 91, 92 (S.D.1980); S.D.Codified Laws § 15–7–4 (1991). Thus, its courts have demonstrated a willingness to entertain causes of action antedating the jurisdictional basis. Second, the statutory provision concerning withdrawal by a foreign corporation limits the authority of the agent appointed under its terms to causes of action arising while the corporation was authorized to do business in the state. The statute requiring the appointment of such an agent while the corporation is registered to do business within the state, however, contains no such limitations. The specific temporal limitation in the revocation statute, coupled with the absence of any such limitation in the registration statute, suggests that the time of the facts giving rise to the cause of action is irrelevant when an agent appointed pursuant to S.D.Codified Laws § 47–8–15 is personally served.

More fundamentally, this argument misunderstands the nature of general jurisdiction. The South Dakota Supreme Court stated that one subject to its general jurisdiction is subject to suit on any transitory cause of action. *Thomson,* 38 S.D. 570, 162 N.W. 373; *Sharkey,* 373 N.W.2d 421. There is no question that the South Dakota courts could exercise jurisdiction over an individual who moved to South Dakota even though the cause of action arose before he arrived. Because the South Dakota Supreme Court has discerned a state policy to treat out-of-state corporations like residents with respect to when they can be sued, we believe that the time at which the facts giving rise to the cause of action occurred is irrelevant.

Thus, we conclude that the South Dakota courts would find personal jurisdiction to exist on these facts.

## B. Due Process

We still must consider whether the due process clause would bar the exercise of jurisdiction over Miles on these facts. This court recently held that a state's requirement that a foreign corporation submit to the jurisdiction of that state's courts in order to qualify to do business did not need to be tested under the due process "minimum contacts" analysis set forth in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196 (8th Cir.1990). Instead, we held that appointment of an agent for service of process constituted consent to jurisdiction, and the due process clause was thus satisfied. As we are bound by that decision, the only question before us today is whether extending such "consent" to cover causes of action antedating the appointment of the process agent violates due process.

We conclude that the rule announced in *Knowlton* is not changed simply because the cause of action antedated the appointment of an agent for service of process. Although the *Knowlton* court noted that the corporate defendant there sued had appointed an agent for service of process prior to the facts in question, its decision did not depend on that fact. Instead, the court focused on whether the Minnesota statute in question extended jurisdiction to the facts before it. The court noted that Minnesota "adheres to the prevailing rule, which permits suit on transitory causes of action ... regardless of where the cause of action arose...." *Id.* at 1200. It continued to "conclude that appointment of an agent for service of process ... gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state. Such consent is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary." *Id.* As a

suant to New Hampshire Revised Statutes § 293–A:119, which provided that "[t]he registered agent appointed by a foreign corporation authorized to do business in this state shall be an agent of the corporation upon whom any process, notice or demand required or permit-

ted by law to be served on the corporation may be served." The defendant claimed that service of process would be "required or permitted by law" only if the corporation could be served pursuant to New Hampshire's long arm statute. The court rejected this view.

court's general jurisdiction is not limited to causes of action accruing after the basis for general jurisdiction arose, and appointment of an agent for service of process in South Dakota subjects the corporation to general jurisdiction, we conclude that there is no due process objection to South Dakota's exercise of jurisdiction in this case. We note Justice Holmes' observation that "when a power [to accept process] actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts. The execution was the defendant's voluntary act." *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 96, 37 S.Ct. 344, 344, 61 L.Ed. 610 (1917).

█ In any case, we could not conclude that Miles is unconstitutionally burdened by having to defend this suit in South Dakota. Even without the appointment of the process agent, Miles should have foreseen similar suits in South Dakota at the time Sondergard consumed Alka–Seltzer Plus. Miles admits that it distributed Alka–Seltzer Plus for sale throughout South Dakota at the time Sondergard took it. Its sales in South Dakota are "not simply an isolated occurrence, but arise[ ] from the efforts ... to serve, directly or indirectly, the market for its product in [South Dakota]." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Thus, Miles had purposely availed itself of the benefits and privileges of South Dakota's laws and economy. *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 253–54, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Its own activities created a connection with South Dakota through which it could reasonably foresee being haled into court in South Dakota. *See, e.g., World–Wide Volkswagen*, 444 U.S. at 296, 100 S.Ct. at 566. Had Sondergard consumed the Alka–Seltzer Plus in South Dakota, there would be no question about the constitutionality of South Dakota's personal jurisdiction.

Thus, Miles is left to argue that they could not foresee being sued in South Dakota on *this particular* cause of action. This argument rings hollow, however, when one realizes that Miles does not engage in face-to-face transactions with the buyers of its products, and does not attempt to structure its sales of Alka–Seltzer Plus with regard to whether or not it might be sued in South Dakota. Instead, it sells Alka–Seltzer in every state. Because Miles does not limit who may buy its product or where they may buy it, we cannot conclude that Miles is unconstitutionally burdened by having to defend this suit in South Dakota simply because the plaintiff did not consume its product there. We believe that South Dakota's exercise of personal jurisdiction over Miles would not violate "traditional notions of fair play and substantial justice." *See, e.g., International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

We therefore reverse the district court's decision denying personal jurisdiction and remand for further proceedings.