**Bobbie J. HICKS, Plaintiff,**

v.

**AMERICAN HERITAGE LIFE INSURANCE COMPANY, Defendant.**

No. 032179.

United States District Court, W.D. Arkansas, Ft. Smith Division.

June 16, 2004.

Robert S. Blatt, Stephen M. Sharum, Fort Smith, AR, for Plaintiff.

Patrick J. Goss, Little Rock, AR, for Defendant.

### MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

Plaintiff brings this action against Defendant insurance company, contending that Defendant is improperly denying payment of her late husband's life insurance benefits. Currently before the Court is Defendant's motion to dismiss or, alternatively, for summary judgment. (Doc. 27.) In her response to Defendant's motion, Plaintiff seeks to renew her January 26, 2004 motion for summary judgment, which the Court denied on March 29, 2004. (Docs. 7 and 17.) Also before the Court is Plaintiff's motion for partial summary judgment. (Doc. 22.). As reflected herein, Defendant's motion (Doc. 27) is DENIED; Plaintiff's motion for partial summary judgment (Doc. 22) is GRANTED for a limited purpose, and Plaintiff's request to renew her January 26 motion is DENIED.

## I. BACKGROUND

The following facts are not disputed:

1. Defendant is a Florida corporation registered to do business in Arkansas. Defendant has a designated agent for service of process in Little Rock, Arkansas. Defendant has a contract with an Arkansas insurance agency, the Byars Agency, Inc., to advertise and sell policies in the state underwritten by Defendant.

2. In January of 2002, Plaintiff and her husband, Verdise L. Hicks, lived in Holiday Island, Arkansas and were employed by Central Trucking, Inc. as truck drivers.

3. Central Trucking's home office is in Edinburgh, Indiana, but it operates a dispatch facility in Springfield, Missouri. The Hickses were dispatched out of both the Edinburgh and Springfield terminals.

4. Defendant offered supplemental life and disability insurance to Central Trucking's employees through a payroll deduction program. The Hickses saw one of Defendant's advertisements for the insurance in the trucking terminal and contacted Rugenia L. Leary, an agent of Defendant's to purchase a policy.

5. Ms. Leary is a registered agent in Missouri and her insurance agency is located there.

6. On January 30, 2002, the Hickses met with Ms. Leary at the Flying J Travel Plaza's restaurant in Joplin, Missouri to complete a supplemental life insurance policy application for Mr. Hicks. Ms. Leary assisted Mr. Hicks in filling out the application in that she would read the application's questions to Mr. Hicks and mark his responses.

7. The application included a section which required the applicant to check either "yes" or "no" to the left of the question.

8. Question 5 asked:

 Within the last three years has any person to be insured had a chronic disease (including, but not limited to, heart disorder, stroke, cancer, diabetes, etc.), been hospitalized, seen a physician (other than for colds flu or normal pregnancy or a routine physical with no unfavorable results) or been counseled for or excessively used alcohol or any type of drugs.

9. When he applied for the life insurance policy in January 2002, Mr. Hicks had previously been diagnosed with diabetes, which he controlled by taking a tablet[1] and by his diet.

---

1. The tablet taken by Mr. Hicks is described in his medical records as Glucotrol XL.

10. Ms. Leary checked "no" next to question 5 on Mr. Hicks's application.

11. Plaintiff maintains that when Ms. Leary read question 5 to Mr. Hicks, he disclosed that he suffered from diabetes and that "he had been taking a tablet [for his diabetes]."

12. Ms. Leary testified in her deposition that Mr. Hicks told her in response to question 5 that he had been diagnosed with diabetes and that he controlled it by his diet. According to Ms. Leary, if Mr. Hicks had told her that he took a tablet for his diabetes, Ms. Leary would not have completed Mr. Hicks's application for supplemental life insurance because it would have "too much of a hassle ... [t]he company may accept it and they may not." Instead, she would have offered him a different policy.

13. Mr. Hicks's policy was issued, effectively February 1, 2002. The premiums were automatically deducted from Mr. Hicks's paychecks.

14. In January 2003, the Hickses sold their home in Holiday Island, Arkansas. They put their furniture in storage and stayed with Mr. Hicks's sister in Indiana between trucking runs. The Hickses planned to purchase or rebuild another home in Arkansas, and Mr. Hicks maintained an Arkansas commercial driver's license.

15. About the time they sold their home in Arkansas, the Hickses left their employment with Central Trucking, and Mr. Hicks began driving for C.R. England, which is based in Salt Lake City, Utah. Because he had left employment with Central Trucking, Mr. Hicks's policy premiums could no longer be paid through a payroll deduction. Ms. Hicks contacted Ms. Leary to arrange direct billing for the premium payments, and a direct payment plan was arranged.

16. On March 25, 2003, Mr. Hicks was admitted to the Veterans Administration Medical Center in Louisville, Kentucky and diagnosed with a brain tumor.

17. Mr. Hicks passed away on May 19, 2003. His cause of death was a glioblastoma brain tumor.[2]

18. Plaintiff filed a claim with Defendant for payment of Mr. Hicks's insurance benefits. At the time she filed the claim, she was staying with Mr. Hicks's sister in Indiana.

19. Defendant initially denied Plaintiff's benefits claim on the grounds that non-payment of premiums caused the policy to lapse. After researching its records, Defendant determined that the policy had not lapsed, but declined to pay the benefits because the policy was still in the two year contestable period. Defendant notified Plaintiff that in order to continue processing the claim, Defendant would need all of Mr. Hicks's medical records from 5 years before February 1, 2002.

20. Defendant has not accepted or denied Plaintiff's claim. Instead, it says it "rescinded" the policy because it was unable to gather "sufficient information to enable it to document the type of medication Mr. Hicks was taking for his diabetes, his compliance, and his level of

---

**2.** A glioblastoma is a general term used for malignant forms of astrocytoma. *See* Dorland's Illustrated Medication, Dictionary at 750, 29th Edition (2000).

control so as to justify the issuance of the policy; therefore, the policy was rescinded."

21. Plaintiff contends that Defendant is improperly denying payment of Mr. Hicks's policy benefits.

## II. DISCUSSION

Defendant moves to dismiss Plaintiff's claim for lack of personal jurisdiction, contending that it does not have sufficient contacts to subject it to personal jurisdiction in Arkansas. In the alternative, Defendant seeks summary judgment on the grounds that the answer "no" to whether Mr. Hicks's had diabetes on his policy application renders the policy void. Plaintiff has filed a motion for partial summary judgment on the issue of Mr. Hicks's cause of death and also renews her January 26, 2004 motion for summary judgment, which the Court denied on March 29, 2004.

### a. Motion to Dismiss for Lack of Personal Jurisdiction

 In a diversity action, a federal court may assume jurisdiction over a non-resident defendant only to the extent permitted by the long arm statute of the forum state and by the Fourteenth Amendment's due process clause. *See Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996). When a defendant challenges personal jurisdiction, the Plaintiff bears the burden of demonstrating that jurisdiction exists. *See Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992). Both the Eighth Circuit and the Arkansas Supreme Court have recognized that the Arkansas long arm statute authorizes jurisdiction to the fullest extent allowed by the due process clause. *See Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 653 (8th Cir. 1982), *Davis v. St. John's Health System, Inc.,* 348 Ark. 17, 23, 71 S.W.3d 55, 59 (2002) (effect of 1995 revision of Arkansas long arm statute was "to convert Arkansas

into a general-jurisdiction state for purposes of personal jurisdiction").

To satisfy the requirements of due process, a nonresident defendant must have "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A court must look to the quality and nature of the nonresident defendant's contacts with the forum state. *See id.* A nonresident's contacts with the forum state must be sufficient to cause the defendant to "reasonably anticipate being hailed into court there." *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

 The Eighth Circuit uses a five factor test, the first three factors being the most important, to determine the sufficiency of a defendant's contacts. A court must consider: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum; and (5) the convenience of the parties. *See Burlington Indus.,* 97 F.3d at 1102–03. The third factor, the relationship of the cause of action to the state, distinguishes between specific and general personal jurisdiction. Specific jurisdiction refers to jurisdiction arising from or related to a defendant's actions within the state. *See Bell Paper Box Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994). General jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose. *See id.*

 Plaintiff contends that this Court has general personal jurisdiction over nonresident Defendant by virtue of Defendant

being a corporation authorized to do business in Arkansas and having a registered agent for service of process in Arkansas. Plaintiff, in fact, effected service of process on Defendant by serving its Arkansas agent with her complaint. Arkansas requires that foreign corporations transacting business in Arkansas register with the secretary of state and appoint a registered agent for service of process. *See* Ark. Code Ann §§ 4–27–1501 and 1507. As a general rule, "the purpose of requiring designation of an agent for service is to make a nonresident suable in local courts." *See Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196 (8th Cir.1990). The effect of such a designation can be limited to claims arising out of in-state activities, but if the statute contains no such limitation, designation of an agent for service of process is sufficient to confer personal jurisdiction in that state. *See Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1396 (8th Cir.1993) (holding that designation of agent for service of process confers general personal jurisdiction); *Ocepek v. Corporate Transport, Inc.,* 950 F.2d 556 (8th Cir.1991).

■ The Arkansas legislature did not limit suits against nonresident corporations to claims arising out of in-state activities. Arkansas law provides for service on a foreign corporation:

> The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation ...

Ark.Code Ann § 4–27–1510(a). This provision demonstrates that the service agent appointed by Defendant has authority to receive service for causes of action arising outside Arkansas. *See e.g., Sondergard,* 985 F.2d at 1394 (interpreting identically worded South Dakota statute). Like the statutes construed in similar Eighth Circuit cases, this statute does not limit the

authority of Defendant's Arkansas agent to accept service only on causes of action arising within the state. *See id.* Defendant's designation of an agent, therefore, confers general personal jurisdiction in Arkansas. *Cf. Sondergard v. Miles, Inc.,* 985 F.2d at 1396(holding that designation of agent for service of process confers general personal jurisdiction).

■ In addition to having a registered agent for service of process, Plaintiff asserts that Defendant has additional contacts with Arkansas. Since 1997, Defendant has contracted with an Arkansas insurance agent to advertise and sell policies and has underwritten policies sold in the state. Defendant's business contacts with Arkansas, coupled with its designation of an agent for service of process, are contacts of sufficient quantity and quality for Defendant to anticipate being "hailed into court" in Arkansas. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559; *see also, Burlington Indus.,* 97 F.3d at 1103; *Davis,* 348 Ark. at 27, 71 S.W.3d at 60–61 (finding that designation of agent for service and doing business in Arkansas subjected defendant to personal jurisdiction in Arkansas).

Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED. (Doc. 27.)

**b. Motions for Summary Judgment**

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgement as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S.

317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case and on which she will bear the burden of proof at trial, then the defendant is entitled to summary judgment and all other facts are rendered immaterial. *See Thelma D. by Delores A. v. Bd. of Educ.*, 934 F.2d 929, 932 (8th Cir.1991).

Plaintiff moves for partial summary judgment on the issue of her husband's cause of death. (Doc. 22.) She contends that it is an undisputed material fact that her husband died of a brain tumor as a result of glioblastoma and not diabetes melitus. Defendant has filed a response that it agrees that Mr. Hicks's death resulted from glioblastoma. Though Mr. Hicks's cause of death is material to this action, the fact that his cause of death is undisputed does not entitle Plaintiff to judgment as a matter of law. Pursuant to Rule 56(d), the Court deems the fact that Mr. Hicks's death resulted from glioblastoma to be without substantial controversy. Plaintiff's motion (Doc. 33) is GRANTED to the extent that upon trial of this action, the cause of Mr. Hicks's death as glioblastoma will be deemed established.

In her response to Defendant's motion, Plaintiff renews her January 26, 2004 motion for summary judgment and invites the court to reconsider its March 29, 2004 order denying it. Plaintiff's request to renew her motion is DENIED.

Defendant moves for summary judgment, contending that Mr. Hicks made false statements on his supplemental insurance policy application. Defendant argues that under either Arkansas or Indiana law, a false representation on an insurance policy "material to the risk" voids the policy and supports Defendant's decision to rescind Mr. Hicks's policy. Plaintiff responds that after Mr. Hicks told the insurance agent that he had diabetes which he controlled with a tablet, the insurance agent checked "no" next to question 5, which asked if the applicant had diabetes. Plaintiff contends that Missouri law applies and that Defendant is not entitled to summary judgment because under Missouri law, Defendant cannot rely on the alleged misrepresentations to avoid honoring the policy. To address these arguments, the Court must consider which state's law applies to Plaintiff's claim.

### 1. Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the forum state to determine whether the law of the forum state or some other state controls the resolution of the action. *See Potter v. St. Louis–San Francisco Railway Co.*, 622 F.2d 979, 981 (8th Cir.1980). Both parties agree that Arkansas courts have resolved choice of law questions involving insurance contracts by applying the law of the state where the contract was made-the *lex loci contractus* rule. *See Southern Farm Bureau Cas. Ins. Co. v. Craven*, 79 Ark.App. 423, 427, 89 S.W.3d 369, 372 (2002). The parties here entered into an insurance contract in Missouri. Under the *lex loci* analysis used by Arkansas courts, Missouri law applies. *See id.* at 427–28, 89 S.W.3d at 372.

### 2. Effect of the Alleged Misrepresentations under Missouri Law

Under Missouri's misrepresentation statute, Mo.Rev. Stat. § 376.580 (2003), an insurance company cannot rely on misrepresentations that did not actually contribute to an insured's death to void a policy. The statute, by its plain language, applies only to insurance policies on the lives of persons who are citizens of Missouri. *See* Mo.Rev.Stat. § 376.580 (2003). The statute, therefore, is not applicable to this case, as Mr. Hicks was never a citizen of Missouri. As the misrepresentation

statute is inapplicable here, the Court must look to Missouri's common law.

 It is well settled in Missouri that when false statements on an insurance application result from an agent's mistake rather than the bad faith of the insured, the insurer is estopped from relying on the false information to void the policy. *See Russell v. Farmers & Merchants Ins. Co.*, 834 S.W.2d 209, 216 (Mo. App.1992) (internal citations omitted); *see also Neill v. Nationwide Mutual Fire Ins. Co.*, 355 Ark. 474, 139 S.W.3d 484 (2003) ("an insurer will not be allowed to use misstatements in the application to avoid liability where the misstatements are the result of fraud, negligence, or mistake by the insurer's agent"). In the instant case, there is a dispute regarding whether the misinformation on Mr. Hicks's policy resulted from the mistake of the insurance agent or from the misrepresentation of the deceased. Plaintiff asserts that Mr. Hicks told the insurance agent that he had diabetes which he controlled with a tablet and the insurance agent mistakenly filled out his application stating that he did not have diabetes. The agent testified that Mr. Hicks told her that he had diabetes which he controlled through diet alone and never mentioned a tablet. These conflicting statements present an issue of fact and credibility for a jury to decide and preclude summary judgment. Accordingly, Defendant's motion is DENIED.

## III. CONCLUSION

Based on the foregoing, Defendant's motion to dismiss or, alternatively, for summary judgment (Doc. 27) is DENIED. Plaintiff's motion for partial summary judgment on the issue of cause of death (Doc. 22) is GRANTED to the extent that the fact that Mr. Hicks's death resulted from glioblastoma is deemed established for purposes of trial. Plaintiff's request to renew her January 26 motion (Doc. 29) is DENIED.