PRINCIPAL RESIDENTIAL
MORTGAGE, INC.,
Plaintiff,

v.

MAC–CLAIR MORTGAGE
CORPORATION,
Defendant.

No. 4:04–CV–90393.

United States District Court,
S.D. Iowa,
Central Division.

Sept. 16, 2004.

**924**

Kimberley K. Baer, Wandro & Associates PC, Des Moines, IA, for Plaintiff.

Dennis W. Johnson, Angela E. Dralle, Amy M. Omvig, Dorsey & Whitney, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Principal Residential Mortgage, Inc., is an Iowa corporation with its principal place of business in Des Moines, Iowa. Defendant, Mac–Clair Mortgage Corp., is a Michigan corporation with its principal place of business in Flint, Michigan. On December 18, 2000, Plaintiff and Defendant entered into a Whole Loan Sale Agreement (Agreement), whereby Defendant would submit for sale to Plaintiff residential first mortgage loans, which Plaintiff would then purchase for servicing and re-sale on the secondary market. Plaintiff filed a complaint in the Iowa District Court for Polk County alleging claims of breach of the Agreement. The case was subsequently removed to this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction.

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Clerk's No. 5) The parties briefed the issues and the Court issued an Order on September 9, 2004 (Clerk's No. 12) continuing the hearing on Defendant's Motion to Dismiss until September 17, 2004. Defendant submitted a reply brief on September 10, 2004. Defendants have request Oral Argument pursuant to the Local Rules of Practice. Upon review of the submitted briefs and careful consideration of the issues, the Court now proceeds with its ruling on the Motion to Dismiss without the need of Oral Argument.

## I. BACKGROUND

The business relationship between Plaintiff and Defendant began in 1999 when the Plaintiff contacted Defendant about the possibility of a future business relationship. After the initial contact, there were negotiations between the parties that eventually led to Defendant's rejection of the offer in April 2000. A period of over five months passed until Defendant contacted the Plaintiff on September 27, 2000 requesting that Plaintiff send a Correspondent Approval Request Form.[1] Defendant

---

1. Defendant submits that during that five months a representative of the Plaintiff continued to solicit Defendant's business. However, for the prima facie showing of jurisdiction, we assume that Plaintiff's assertion that "no additional discussions were held" or further solicitations pursued is true.

received the application, which it completed and submitted to Plaintiff. A new series of negotiations ensued and Defendant was approved to sell residential loans to Plaintiff, and an Agreement was entered into by the parties on December 18, 2000. The Agreement included a choice of law clause, whereby it would be governed and interpreted in accordance with the laws of the State of Iowa.

Under the Agreement, Defendant, at its own discretion, would submit residential loans for sale to the Plaintiff. The loans had to originate in Michigan, Minnesota, Ohio or Tennessee. None of the loans originated in Iowa. The loans submitted had to comply with the requirements set forth in the Agreement. The Defendant would warrant the loans and agree to indemnify Plaintiff if Plaintiff incurred any losses resulting from a sold loan that did not meet the requirements. With each loan submitted, there was substantial documentation transferred and subsequent negotiations, between the parties. Save one visit that Plaintiff made to Defendant in Michigan, all of the correspondence between the parties occurred by telephone, faxes, letters and emails.

All of Defendant's contacts with Iowa have been through or related to the Agreement with Defendant. Indeed, Defendant has never been to Iowa. Defendant is not licensed to do business in Iowa. Defendant does not have an agent in Iowa, maintain any bank accounts, or hold real or personal property in the State of Iowa. Defendant does not advertise or conduct any business in Iowa, outside of the business with Plaintiff, nor has Defendant paid taxes in Iowa. However, Plaintiff and Defendant have been in a business relationship for three years, which resulted in Defendant making numerous contacts with the State of Iowa with the help of modern communication technology.

Under the Agreement, Defendant submitted and sold over 2000 loans to Plaintiff totaling $211,579,747.00 in sales. There were hundreds of contacts between the parties on a daily basis. A phone log representing calls from Defendant to Plaintiff is over fifty-eight pages long. Performance under the contract occurred in both Michigan and in Iowa. Defendant would initially submit the loan from Michigan by faxing and sending documentation to Iowa. Then negotiations would ensue between the parties in Michigan and Iowa by telephone, fax, and email. The decision to buy a submitted loan was made in Iowa by the Plaintiff. Additionally, over the three year relationship, Defendant would periodically conduct internal audits in Michigan and send the results to Plaintiff in Iowa, if problems arose concerning various loans. There were also loans that Plaintiff purchased that went into bankruptcy or foreclosure where Plaintiff and Defendant would work together to resolve the issue. The relationship continued as such until October 28, 2003, when Plaintiff suspended Defendant as a correspondent lender.

The Complaint Plaintiff filed concerns four of the loans that Defendant submitted and Plaintiff purchased under the Agreement. Two of the loans originated in Michigan and two originated in Ohio. Plaintiff asserts that these loans did not fit the requirements of the Agreement and Defendant has refused to repurchase the loans or indemnify Plaintiff for its losses. The question before the Court is whether Defendant's contacts with the State of Iowa are such that assertion of personal jurisdiction over the company is proper in this case.

## II. LEGAL STANDARD FOR PERSONAL JURISDICTION

The plaintiff bears the ultimate burden of proving personal jurisdiction

over the defendant. *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988). Jurisdiction, however, need not be proved by a preponderance of the evidence until trial or until an evidentiary hearing is held. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a *prima facie* showing of jurisdiction. *Dakota Indus.*, 946 F.2d at 1387. When examining the *prima facie* showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications Inc.*, 89 F.3d 519, 522 (8th Cir.1996) (citing *Dakota Indus.*, 946 F.2d at 1387).

■ Determining whether the Court may properly exercise personal jurisdiction over a foreign corporation involves a two-step analysis. *Dakota Indus.*, 946 F.2d at 1387–88. First, the exercise of jurisdiction must be appropriate under the relevant state long-arm statute. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir.2003) (citing *Dakota Indus.*, 946 F.2d at 1387). Second, the Court examines "whether the exercise of personal jurisdiction comports with the requirements of due process." *Stanton*, 340 F.3d at 693.

■ The relevant long-arm statute in this case, Iowa Rule of Civil Procedure 1.306 (formerly Rule 56.2) permits jurisdiction to the fullest constitutional extent. *See Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992); *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). In other words, Iowa's long-arm statute is satisfied if the exercise of personal jurisdiction over the Defendant satisfies the requirements of the Due Process Clause of the Fourteenth Amendment.

■ The Due Process Clause requires that the exercise of personal jurisdiction over a person does not offend "our traditional conception of fair play and substantial justice". *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 312, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *International Shoe*, 326 U.S. at 319, 66 S.Ct. 154). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citing *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154). Examining the origin and extent of these, "minimum contacts" with the forum state, "'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559). In the analysis it is crucial to look to the defendant's own actions to see if there is "purposeful availment", whereby the defendant, by his own actions, creates a "substantial connection" with the forum state. *See World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. 580 (defendant's conduct must be such that he should reasonably anticipate being haled into court there); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (purposeful availment invokes the benefits and protections of the forum's laws); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (purposeful availment ensures that jurisdiction

is not a result of "random," "fortuitous," or "attenuated" contacts).

In a discussion of whether personal jurisdiction is proper, it is helpful to determine if the plaintiff is asserting that the forum has general jurisdiction or specific jurisdiction over the defendant. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Sondergard v. Miles*, 985 F.2d 1389 (8th Cir.1993) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction arises if the defendant, "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174. It is a narrower assertion of personal jurisdiction since it is only over a "specific" cause of action that is related to or arose from the contacts defendant had with the forum.

In contrast is general jurisdiction, where the state has the power to assert personal jurisdiction against the defendant regardless of the claim and its connectedness to the "minimum contacts" the defendant has in the forum state. "Even when the cause of action does not arise out of or relate to the foreign corporations activities in the forum State, due

process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868.

For general jurisdiction to attach, a defendant's contacts with the forum must be "continuous and systematic." *Id.* at 466, 92 S.Ct. 1628. In the present case, all of the Defendant's contacts with Iowa "arise from or are related" to the Agreement, which is the subject of the suit. Therefore, this Court will concern itself with the assertion of specific jurisdiction.[2]

The Eighth Circuit has developed a five-factor test to determine whether a nonresident defendant has sufficient minimum contacts with the forum state for the Court to exercise personal jurisdiction. *Stanton*, 340 F.3d at 694 (citing *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir.1987)). Under this test, the Court must consider: "(1) the nature and quality of contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id.* Of the five factors, "the first three factors are of primary importance, and the last two are 'secondary factors.'" *Id.* "Because the first three factors are closely interrelated, we consider them together." *Digi–Tel*, 89 F.3d at 523.

---

2. Whether the duration of the contract, the number of loans sold to Plaintiff, or the substantial amount of money that Defendant has received in this forum makes Defendant's conduct "continuous and systematic" so that Iowa could assert general jurisdiction over the Defendant is not before the Court today. *See Digi–Tel*, 89 F.3d at 522 n. 4 ("The alleged contracts in the present action are related to

the dispute that resulted in this suit, and therefore we have an assertion of specific rather than general jurisdiction."); *Lakin v. Prudential Sec.*, 348 F.3d 704 (8th Cir.2003) (where general jurisdiction over defendant was found due to banking activities totaling over ten million in the forum state, that were unrelated to the cause of action.).

## III. DISCUSSION OF DEFENDANT'S "MINIMUM CONTACTS" WITH IOWA

 In the present case, the Defendant has and has acted under an Agreement with Plaintiff for the past three years, but never physically entered into Iowa. However, "jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. Additionally, the mere entering into a contract alone cannot confer jurisdiction. *Id.* at 478, 105 S.Ct. 2174. "In a contract case a court must consider the parties' prior negotiations, contemplated future consequences and actual course of dealings. The terms of the contract must be taken into account as well." *St. Jude Medical, Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir.2001) (citing *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174). Defendant's contacts with Iowa include the request to be sent a Correspondent Approval Request Form, negotiations leading up to the Agreement, the submission of at least 2000 loans to Plaintiff, and subsequent correspondence regarding each loan. Additionally, the Iowa choice of law clause in the Agreement is relevant to the discussion of personal jurisdiction. It is with the above mentioned due process considerations in mind that this Court examines the origin of the business relationship between the parties, the nature of the correspondence, and the terms of the contract.

Plaintiff initially contacted Defendant to enter into a business relationship. However, the initial negotiations ended in Defendant's rejection of the offer. It was then the Defendant who sought out Plaintiff and requested to be sent another application form to become a correspondent lender. The situation is similar to the facts presented in the Eighth Circuit case of *Wessels v. National Medical Waste, Inc.*, 65 F.3d 1427 (8th Cir.1995). In *Wessels*, where the Eighth Circuit found specific jurisdiction was proper, there was a factual dispute over who initiated the business deal. The Eighth Circuit stated: "Although unclear who made the phone call, what is clear is that National pursued a business relationship with Wessels ...", and this was evidence of the defendants "purposeful availment" to the forum. *Wessels*, 65 F.3d at 1432–1433. Similarly, although Plaintiff made the initial contact with the Defendant, Defendant subsequently actively pursued a business relationship evidenced by the call requesting an application form and the over 2000 loans that Defendant submitted to Plaintiff.

As stated above, Defendant sold over 2000 loans to Plaintiff. The Agreement did not require that Defendant submit any loans to the Plaintiff in Iowa. Therefore, with each submitted loan, Defendant was, "purposefully avail(ing) itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228. "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, *Kulko v. California Superior Court*, 436 U.S. 84, 96, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities" *Burger King*, 471 U.S. at 473–474, 105 S.Ct. 2174. In the case of the Defendant, the "purposefully derived benefit" was $ 211,579.747.00 in sales to an Iowa corporation.

Defendant argues that all of the correspondence between the parties was conducted over the telephone, and through letters, faxes and emails, and therefore cannot be used to confer personal jurisdiction. Defendant cites the Eighth Circuit cases of *Bell Paper Box, Inc. v. Transwest*

*Polymers, Inc.,* 53 F.3d 920 (8th Cir.1995) and *Digi–Tel,* 89 F.3d 519, for the contention that interstate facilities are secondary or ancillary factors and cannot alone provide the minimum contacts required by due process.

In *Transwest,* the Eighth Circuit found that there was no specific jurisdiction over a defendant who submitted a purchase order to a South Dakota manufacturer. Defendant correctly quotes the opinion, which states that interstate facilities cannot alone provide minimum contacts required by due process. However, unlike the present case, the *only* interstate communication linking the defendant to South Dakota was a single purchase order. *Transwest,* 53 F.3d at 921. In the present case, the interstate communications are voluminous and occurred over a period of three years. *Transwest* is further distinguishable from the present case because in *Transwest* the business relationship was initiated by the plaintiff. The plaintiff had arranged for a broker to solicit the defendant in California and all negotiations occurred in California. As discussed above, in this case Defendant sought out an extensive business relationship with Plaintiff and negotiations occurred in both Michigan and Iowa.

The Defendant also cites *Digi–Tel* for the contention that interstate communications are not sufficient to establish personal jurisdiction. The Eighth Circuit states: "Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction." *Digi–Tel,* 89 F.3d at 523. To begin, *Digi–Tel* is factually distinguishable from the present case. In that case, the plaintiff and defendant never dealt directly with each other. The defendant was a company from Singapore. A third party ordered phones from the defendant. The third party then resold the phones to the plaintiff. When the defendant did not deliver the phones to the third party, plaintiff sued the defendant as a third party beneficiary. In contrast, the parties here dealt directly with each other for a period of three years. In addition, this does not does not rely solely on interstate communications to establish personal jurisdiction.

What Defendant fails to recognize is that these interstate communications support the exercise of personal jurisdiction, especially when they are numerous and substantial. Viewed in light of other factors—such as Defendant's purposeful actions towards Iowa, the length of the business relationship, the negotiation and performance of the Agreement in both Michigan and Iowa, and the contract terms itself—the interstate communications make it more clear that personal jurisdiction is proper in this case. "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. Similarly, the Defendants contacts with Iowa are not physical, but they certainly are numerous and substantial, and Defendant has incurred substantial benefit from these contacts.

■■■ Defendant also argues that the mere presence of a choice of law provision is not sufficient itself to confer jurisdiction. This is a true statement. *See Digi–Tel,* 89 F.3d at 523 (a choice of law provision is insufficient itself to confer jurisdiction). However, personal jurisdiction in this case is not based solely on the choice of law

clause. Further, choice of law provisions are an important factor in determining a defendant's, deliberate affiliation with the forum state and the reasonable foreseeability of litigation there. *See Burger King*, 471 U.S. at 481, 105 S.Ct. 2174; *Digi–Tel*, 89 F.3d at 523. The choice of law provision does deserve weight in this analysis, and combined with Defendants other contacts with Iowa, it reinforces the assertion of jurisdiction over the Defendant.

Considerations of the secondary factors further support the assertion of personal jurisdiction. Plaintiff is an Iowa corporation and Iowa, "has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents." *Digi–Tel*, 89 F.3d at 525. Also, the witnesses likely to be called in this case are present in both Iowa and Michigan, making either Iowa or Michigan convenient forums.

## IV. CONCLUSION

This is not a case where Defendant's contacts with Iowa are merely "random," "fortuitous," or "attenuated." Neither is Defendant's connection with Iowa the result of "unilateral activity of another party or a third person." *Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868. Over the last three years, Defendant has participated in and initiated over two hundred million dollars of sales with the Plaintiff in the State of Iowa. Taken together, the Defendant's contacts with Iowa highlight a series of deliberate actions whereby Iowa's personal jurisdiction over the Defendant is reasonable, foreseeable and in line with "traditional conceptions of fair play and substantial justice." Accordingly, this Court finds that personal jurisdiction in this case is proper, and satisfies both the long arm statute of Iowa and the requirements of Due Process Clause of the Fourteenth Amendment.

Therefore, Defendant's Motion to Dismiss (Clerk's No. 5) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction is DENIED, and the Oral Argument set for September 17, 2004 is CANCELLED.

IT IS SO ORDERED.