Patrick ATKINSON, an individual, and The God's Child Project, a North Dakota nonprofit organization, Plaintiffs,

v.

James McLAUGHLIN, an individual, and Roberta McLaughlin, Defendants.

No. A1–03–091.

United States District Court, D. North Dakota, Southwestern Division.

Nov. 4, 2004.

Orell D. Schmitz, Schmitz Moench and Schmidt, Bismarck, ND, for Plaintiffs.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Dismiss filed on August 16, 2004. The Plaintiffs filed a response opposing the motion on September 24, 2004. The Plaintiffs also requested oral argument. For the reasons outlined below, the motion is denied.

## I.  *BACKGROUND*

The God's Child Project is a North Dakota nonprofit corporation with its headquarters located in Bismarck, North Dakota.  The God's Child Project has an organized volunteer network that "provides health care, medical care, housing, food and education to ... children, adolescents, and young adults, and provides educational and health services for ... poor persons in nine departments across Guatemala."  Complaint, ¶ 2. The plaintiff, Patrick Atkinson ("Atkinson"), is a resident of North Dakota who founded the God's Child Project in 1991 and serves as the executive director.

From July of 1997 to March of 1998, the defendants, James McLaughlin and Roberta McLaughlin ("McLaughlins"), volunteered for the God's Child Project in Guatemala through a Guatemalan-registered charity entitled Association Nuestros Ahijados which was also founded by Atkinson. In March of 1998, the McLaughlins were suspended and ultimately dismissed from

their volunteer positions.[1] After their dismissal, the McLaughlins compiled a list of allegations against Atkinson and, with the help of third-party surrogates, filed them with various Guatemalan authorities.

The McLaughlins returned to the United States after March of 1998. In late November of 1998, the McLaughlins created a Web site entitled "Friends of Guatemalan Children" at the domain name *www .guatemalanchildren.org.* The Web site allegedly contains "both specific false statements about Atkinson and God's Child as well as innuendo, insinuations and unrelated inferences to and about various individuals that have been accused and, in some cases, convicted, of criminal and other wrongful conduct." Complaint, ¶ 24. Atkinson contends the McLaughlins have used the Web site to conduct a "smear" campaign. The smear campaign included telephone calls made to God's Child Project benefactors, regional ecclesiastical authorities, and political authorities discouraging them from supporting the God's Child Project. Complaint, ¶ 26.

On July 28, 2003, Atkinson filed an action with this Court seeking "preliminary and permanent injunctive relief to enjoin defendants' continued defamation of Plaintiffs, including through the Web site, defendants' tortious interference with Plaintiffs' business, and for damages caused by defendants' wrongful acts." Complaint, ¶ 6.

## II. *LEGAL DISCUSSION*

The McLaughlins have filed a Motion to Dismiss for lack of personal jurisdiction, failure to prosecute and for ineffective service of process. The Court will address each in turn.

## A. *PERSONAL JURISDICTION*

The initial inquiry is whether the Court has personal jurisdiction over the McLaughlins. The Motion to Dismiss was filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction over the party. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Min. Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 373 (8th Cir.1990); *Watlow Elec. Mfg. v. Patch Rubber Co.,* 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir.2004). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps,* 327 F.3d 642, 647 (citations omitted).

As a preliminary matter, it should be noted that this action is in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court in a diversity action will have personal jurisdiction to the same extent as a state court of the state in which that federal district court sits. *Dean v. Olibas,* 129 F.3d 1001, 1003 (8th Cir.1997). Therefore, when this Court sits in diversity, the analysis for personal jurisdiction involves two steps: (1) the court must determine whether the State of

---

**1.** The Plaintiffs' Complaint sets forth the following reasons for the McLaughlins' dismissal: "(a) on suspicion of misappropriating funds from God's Child and Nuestros Ahijados; and (b) because the McLaughlins admitted to breaking and entering the private residence of a Guatemalan family."

North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions. *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 706–707 (8th Cir.2003) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). To satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process. . . ." *Hansen v. Scott*, 645 N.W.2d 223, 230 (N.D. 2002) (citing *Auction Effertz, Ltd. v. Schecher*, 611 N.W.2d 173 (N.D.2000); *Hust v. Northern Log, Inc.*, 297 N.W.2d 429, 431 (N.D.1980)). The Eighth Circuit has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the two-step test collapses into a single question of whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir.2001); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994); *see Hansen v. Scott*, 645 N.W.2d 223, 232 (N.D.2002) (recognizing that a federal court sitting in diversity may collapse the two step framework under North Dakota law).

"Due process requires minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir.2004) (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, i.e., general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever*, 380 F.3d 1070, 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state.

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider " 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.' " *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

The Eighth Circuit has established a five-part test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: (1) the nature and quality of [a defendant's] contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of

the forum state in providing a forum for its residents; and (5)[the] convenience of the parties. *Dever,* 380 F.3d 1070, 1073–74 (citing *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996)). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.,* 51 F.3d 1383, 1388 (8th Cir. 1995). The Eighth Circuit affords "significant weight" to the first three factors.

■ It is undisputed the McLaughlins have never visited North Dakota, do not conduct business in North Dakota, have no offices in North Dakota, have no personal or real property in North Dakota, and maintain no bank accounts in North Dakota. The Court has reviewed the pleadings in a light most favorable to the non-moving party and finds the McLaughlins fall short of the type of the minimum contacts needed to support the conclusion they have had "continuous and systematic" contact with North Dakota so as to invoke general jurisdiction. As such, the only remaining question is whether the Court can exercise specific jurisdiction over the McLaughlins based on their Internet communications.

As previously noted, specific jurisdiction requires that the cause of action arise out of or be related to the defendants' contacts with the forum state. *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 648 (8th Cir.2003). The Court will analyze each of the McLaughlins' contacts in relation to the claims being asserted and the factors prescribed by the Eighth Circuit.

### 1. NATURE AND QUALITY OF CONTACTS

Under this factor, the primary issue is whether the non-resident defendants "have fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty." *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 576 (8th Cir. 1992) (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The contact(s) with the forum state must be more than "random, fortuitous, or attenuated." *Id.*

### a) THE McLAUGHLINS' WEB SITE

This Court has not had occasion to consider issues pertaining to personal jurisdiction involving the Internet. Atkinson alleges the McLaughlins' Web site [2] provides this Court with specific jurisdiction. Many courts have examined jurisdictional issues involving the Internet and how electronic contacts affect the exercise of personal jurisdiction. *See* Richard E. Kaye, Annotation, "Internet Web Site Activities of Nonresident Person or Corporation as Conferring Personal Jurisdiction Under Long–Arm Statutes and Due Process Clause", 81 A.L.R.5th 41 (2003). In some jurisdictions, a "sliding scale" test has been adopted in Internet cases to determine whether the courts have personal jurisdiction over a non-resident defendant. This test involves an examination of the active versus passive nature of the web site. *See Zippo Mfg. Co. v. Zippo Dot*

---

**2.** As quoted in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997), "[a] 'site' is an Internet address that permits the exchange of information with a host computer. *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The 'Web' or 'World Wide Web' refers to the collection of sites available on the Internet."

*Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (utilizing a "sliding scale" test for jurisdiction which considers a web site's level of interactivity and the nature of commercial activities conducted over the Internet). There are other courts that apply the "effects test" derived from a United States Supreme Court decision entitled *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) in which a California resident sued several Florida residents, including the author and editor of a National Enquirer article, for libel. The United States Supreme Court held the exercise of jurisdiction was proper because of the foreseeable "effects" in California of the non-resident defendant's activities.

In *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir.2003), the Eighth Circuit discussed whether and how a Web site could provide minimum contacts to invoke personal jurisdiction. The Court noted that many circuit courts have addressed Web sites and personal jurisdiction but their analysis focused on specific jurisdiction. The Court recognized that a majority of the circuits have adopted the analytical framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). The Eighth Circuit quoted *Zippo* and stated "that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Lakin*, 348 F.3d 704, 710 (quoting *Zippo*, 952 F.Supp. 1119, 1124). The Eighth Circuit noted that the federal court in *Zippo* created a "sliding scale" test to measure the nature and quality of the commercial contacts for assessing the exercise of personal jurisdiction. The Eighth Circuit also restated a portion of the *Zippo* court's holding that described the "sliding scale" concept:

At one end of the spectrum are situations where the defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d 704, 710–11 (quoting *Zippo*, 952 F.Supp. 1119, 1124). The Eighth Circuit concluded that the "sliding scale" approach was appropriate in cases of specific jurisdiction. In light of the Eighth Circuit's holding in *Lakin*, this Court must analyze whether the McLaughlins' Web site provides the Court with specific jurisdiction.

The McLaughlins characterize their Web site as passive and contend that the Web site does nothing more than provide information to those interested in it. Conversely, Atkinson characterizes the Web site as interactive because it has a hyper linked, e-mail address for individuals to contact the McLaughlins. Both parties agree the McLaughlins are not conducting business by way of their Web site. As a result, the McLaughlins' Web site must fall into either the middle or the passive

end of the "sliding scale" spectrum as described in *Zippo*.

Neither this Court nor the Eighth Circuit have previously addressed the issue of whether a hyper-linked, e-mail address, by itself, will render a Web site "interactive" for purposes of exercising personal jurisdiction. However, the McLaughlins cite to the Fifth Circuit case of *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999), for the proposition that an e-mail address provided on a Web site is not sufficient to classify a cite as interactive. In *Mink*, the plaintiff contended that the United States District Court for the Southern District of Texas had personal jurisdiction over the defendant because it maintained a Web site accessible by Texas residents. The Fifth Circuit disagreed. The court held:

> We note that AAAA's website provides an e-mail address that permits consumers to interact with the company. There is no evidence, however, that the website allows AAAA to do anything but reply to e-mail initiated by website visitors. In addition, AAAA's website lacks other forms of interactivity cited by courts as factors to consider in determining questions of personal jurisdiction. For example, AAAA's website does not allow consumers to order or purchase products and services on-line.

*Mink*, 190 F.3d 333, 337 (citations omitted). The Fifth Circuit concluded that "the presence of an electronic mail access, a printable order form, and a toll-free number on a website, without more, is insufficient to establish personal jurisdiction." *Id.*

Atkinson does not disagree with the holding in *Mink*. Instead, he attempts to distinguish *Mink* by alleging that because the McLaughlins' Web site includes a hyper-linked, e-mail address, it makes the Web site more interactive under the *Zippo* approach. A close reading of *Mink* reveals that the Fifth Circuit considered this argument. In a footnote, the court recognized that the e-mail address contained on the Web site was a different color and underlined, possibly indicating an e-mail hyper link. *Mink*, 190 F.3d 333, 337, n. 1. Nevertheless, the Fifth Circuit said that an e-mail hyper link, without more, would not change the holding of the court. *See Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 133–15 (D.Conn.1998) (finding a Web site described as being "replete" with hyper links did not confer jurisdiction); *Advanced Software, Inc. v. Datapharm, Inc.*, CV 98–5943 DDP (RZx), 1998 U.S. Dist. LEXIS 22091, *1–15 (C.D.Cal. Nov. 3, 1998) (finding no jurisdiction for a Web site that contained among other things an e-mail hyper link).

■ The Court finds the *Mink* decision to be persuasive. The Court further finds that the McLaughlins' Web site is passive under the *Zippo* "sliding scale" approach as adopted by the Eighth Circuit. The Web site provides information about Patrick Atkinson and the God's Child Project. The fact the McLaughlins' Web site contains an e-mail, hyper-link does not, in and of itself, render the Web site interactive. Atkinson has provided no further explanation as to why the Web site should be considered interactive. As a result, maintaining a passive Web site does not support the exercise of personal jurisdiction. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir.2004) (holding that maintaining a passive Web site does not support the exercise of personal jurisdiction); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (same); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir.1999) (same).

## b) *THE CALDER "EFFECTS TEST"*

As an additional basis for personal jurisdiction, the Atkinson cites to the "effects test" recognized by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* a California entertainer brought a libel action against Florida residents who were writers and editors of the National Enquirer, a Florida-based weekly newspaper with a nationwide circulation. The Supreme Court held that California could assert jurisdiction over the non-resident defendants because the defendants' intentional actions were aimed at California, they knew the allegedly libelous articles "would have a potentially devastating impact" on the plaintiff, and they knew the "brunt of the harm" would be suffered in California. Based on those facts, the Supreme Court concluded the defendants could "reasonably anticipate being haled into court" in California. 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The Eighth Circuit has recognized the "effects test" as articulated in *Calder v. Jones. See General Electric Capital Corp. v. Grossman,* 991 F.2d 1376, 1387 (8th Cir.1993); *Hicklin Engineering, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir. 1992); *Dakota Indus., Inc., v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir.1991). However, the Eighth Circuit has used the "effects test" as merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. *See Hicklin Engineering, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir.1992) (holding that although the defen-

dants' alleged harmful activities may have harmed the plaintiff in the state of Iowa, "absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction."); *Dakota Indus., Inc., v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir.1991) (stating that "[i]n relying on *Calder,* we do not abandon the five-part test...." We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged).

In the present case, Atkinson contends the McLaughlins knew that Patrick Atkinson was a resident of North Dakota and knew the God's Child Project was a North Dakota corporation when the allegedly defamatory comments were publicized. Further, Atkinson contend the comments were clearly targeted at North Dakota and cites to the opening comments on the Web site:

> The purpose of this website is to provide information about Patrick Atkinson, and the child sponsorship program, the God's Child Project, that he now operates in Antigua, Guatemala, with funding largely from donors in North Dakota. We believe that potential donors and volunteers should have as much information as possible before deciding to contribute their time, money, or expertise to this particular program.

*See* Defendants' Motion to Dismiss, Exhibit "A". In addition, Atkinson submitted letters apparently sent by the McLaughlins to God's Child Project board members and the North Dakota Attorney General that contain allegedly defamatory statements. *See* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, Exhibit No's. 3 and 4.[3] For those reasons, Atkinson

---

**3.** The McLaughlins contend the allegedly defamatory letters submitted by the Plaintiffs are inadmissible and should not be considered by the Court for purposes of this motion.

According to the McLaughlins, it is the Plaintiff's burden to prove the necessary jurisdictional facts, and the Plaintiff must do so with admissible evidence. Because the Plaintiffs

contends the McLaughlins' allegedly defamatory comments fall within the scope of the "effects test" and that the exercise of personal jurisdiction over the McLaughlins is appropriate.

The McLaughlins cite several cases to support their contention that jurisdiction is improper based on the "effects test" because the allegedly defamatory comments were not directed at North Dakota. *See Revell v. Lidov*, 317 F.3d 467, 472–76 (5th Cir.2002); *Young v. New Haven Advocate*, 315 F.3d 256, 262–63 (4th Cir.2002); *Hicklin Engig., Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992); *Griffis v. Luban*, 646 N.W.2d 527, 533–34 (Minn.2002); *Barrett v. Catacombs Press*, 44 F.Supp.2d 717, 728 (E.D.Pa.1999). When analyzing the "effects test" in relation to Internet communications, several courts have held that " 'a person's act of placing information on the Internet' is not sufficient by itself to 'subject [ ] that person to personal jurisdiction in each State in which the information is accessed.' " *See Young*, 315 F.3d 256, 263 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)).

In *Revell v. Lidov*, the plaintiff, a Texas resident, brought an action against non-residents based upon an allegedly defamatory article posted on an Internet bulletin board. 317 F.3d 467, 469. The Fifth Circuit said "there [was] no reference to Texas in the article or any reliance on Texas sources." 317 F.3d 467, 474. Further, the author of the comments did not know the plaintiff was a resident of Texas. The

Court concluded that Texas could not exercise jurisdiction over non-resident defendants who posted the article on the Internet because the article did not refer to Texas, the article was not specifically directed at Texas readers, and the defendants did not know the plaintiff was a Texas resident. *Id.* at 476.

In *Young v. New Haven Advocate*, the Fourth Circuit addressed a similar situation that arose when two newspapers in Connecticut posted Internet articles about the prison system that allegedly defamed a Virginia prison warden. 315 F.3d 256, 258. The Court held that jurisdiction could not be exercised over the Connecticut newspapers because the defendants "did not manifest an intent to aim their websites or the posted articles at a Virginia audience." *Id.* The focus of the articles was a Connecticut prisoner transfer policy and its impact on the prisoners and their families in the state of Connecticut. The articles were meant to foster public debate in Connecticut regarding the soundness of the policy. One of the Web sites characterized itself as a "source of news and entertainment in Connecticut," rather than in Virginia. Based on those underlying facts, the Fourth Circuit held there was a lack of personal jurisdiction.

The McLaughlins cite to the Eighth Circuit case of *Hicklin Engig., Inc. v. Aidco, Inc.*, 959 F.2d 738 (8th Cir.1992). *Hicklin* did not involve Internet defamation. The plaintiff, Hicklin Engineering, was a Minnesota corporation with its principal place of business in Iowa. It brought an

have not laid the proper foundation for the out-of-court statements contained in the documents, such documents "must be stricken."

The Court recognizes a split among courts as to whether admissible evidence is required for purposes of establishing personal jurisdiction. *Compare Travelers Casualty & Surety Corp. of America v. Telstar Constr. Corp., Inc.*, 252 F.Supp.2d 917, 923 (D.Ariz.2003) (find-

ing that plaintiff must provide admissible evidence to support the exercise of personal jurisdiction); *with In re Baan Co. Securities Litigation*, 245 F.Supp.2d 117, 125 n. 9 (D.D.C.2003) (rejecting such an approach). The Eighth Circuit has yet to adopt a strict approach. Therefore, this Court will not require the Plaintiffs to submit only admissible evidence to establish personal jurisdiction.

action in Iowa against a Michigan corporation alleging libel and intentional interference with business. The Michigan corporation had sent letters to several of Hicklin Engineering's customers, but none of those customers lived in Iowa. The Eighth Circuit held that since the actions of the defendant were not targeted at Iowa, jurisdiction would be improper under the "effects test."

The McLaughlins also cite to *Griffis v. Luban*, 646 N.W.2d 527, 533–534 (Minn. 2002). In *Griffis*, an Alabama resident brought a defamation action in Alabama state court against a Minnesota resident for comments made on an Internet message board. The Minnesota Supreme Court noted that although the defendant knew the plaintiff was a resident of Alabama, the comments were not "expressly aimed" at Alabama. Instead, the comments were aimed at the plaintiff and not to an outside audience. The Internet message board related to the topic of archeology and Egyptology, neither of which had any special relationship to the state of Alabama. Further, the plaintiffs presented no evidence that any other person in Alabama ever read the comments. The court concluded "[t]he fact that messages posted to the newsgroup could have been read in Alabama, just as they could have been read anywhere in the world, cannot suffice to establish Alabama as the focal point of the defendant's conduct." 646 N.W.2d 527, 536. The court held that the "effects test" did not confer jurisdiction.

Finally, in *Barrett v. Catacombs Press*, the plaintiff, a resident of Pennsylvania, filed an action in Pennsylvania against several non-residents for defamation. *Barrett v. Catacombs Press*, 44 F.Supp.2d 717, 720–22 (E.D.Pa.1999) The allegedly defamatory statements were posted on an Internet message board. The court concluded that it could not maintain specific jurisdiction over the defendants based on the comments. The court said, "Unless Pennsylvania is deliberately or knowingly targeted by the tortfeasor, the fact that harm is felt in Pennsylvania from conduct occurring outside Pennsylvania is never sufficient to satisfy due process." *Id.* (citing *Santana Prods., Inc. v. Bobrick Washroom Equip.*, 14 F.Supp.2d 710, 715 (M.D.Pa.1998); *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*, 921 F.Supp. 281, 285 (E.D.Pa.1996)).

■ The above cases can be factually distinguished from the present case. Nevertheless, each case provides the Court with insight into what is needed to exercise personal jurisdiction in cases involving Internet communications. In the present case, the opening paragraph on the McLaughlins' Web site states as follows:

The purpose of this website is to provide information about Patrick Atkinson, and the child sponsorship program, the God's Child Project, that he now operates in Antigua, Guatemala, *with funding largely from donors in North Dakota. We believe that potential donors and volunteers should have as much information as possible before deciding to contribute their time, money, or expertise to this particular program.*

(emphasis added). This paragraph reveals that (1) the focus of the Web site was North Dakota and the Web site deliberately and knowingly targeted North Dakota, and specifically Atkinson and the God's Child Project; (2) the Web site was meant to foster debate in North Dakota, particularly among potential God's Child Project donors; (3) the comments on the Web site were intended for an audience other than simply the Plaintiffs; and (4) the subject matter of the Web site relates to North Dakota because that is the state where the God's Child Project is incorporated. Other evidence also reveals that the McLaughlins knew Patrick Atkinson was a

resident of North Dakota and that the God's Child Project was formed under North Dakota law. *See* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, Exhibits No's. 1–8. Further, the letters sent to God's Child Project board members were received by board members in the state of North Dakota.

It is clear from the record that the McLaughlins' Internet communications were directed uniquely toward the State of North Dakota. Based upon the record available to the Court, the McLaughlins directly targeted North Dakota with their Web site, and specifically Patrick Atkinson and the God's Child Project. The Court is satisfied that the requirements of the "effects test" as enumerated in *Calder v. Jones* have been met.

### 2. QUANTITY OF CONTACTS

■ It is well-established that specific jurisdiction can arise from a single contact with the forum state. *Fulton v. Chicago, Rock Island & P.R. Co.*, 481 F.2d 326, 334–36 (8th Cir.1973). However, when specific jurisdiction is being alleged the quantity of contacts is not determinative. *West Publishing Co. v. Stanley*, No. Civ. 03–5832 (JRT/FLN), 2004 WL 73590, *4 (D.Minn. Jan.7, 2004); (citing *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn.1978); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Marshall v. Inn of Madeline Island*, 610 N.W.2d 670, 674 (Minn.Ct.App.2000)). Thus, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists.

### 3. RELATION OF CONTACTS TO CAUSE OF ACTION

The Court recognizes that all of the McLaughlins' contacts with North Dakota are related to Atkinson's claims of defamation and intentional interference with business. Each claim arises out of the contacts with North Dakota. This factors weighs in favor of the exercise of personal jurisdiction.

### 4. INTEREST OF THE FORUM STATE

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir.2003); *Northrup King Co. v. Compania Productora Semillas Algodoneras*, 51 F.3d 1383, 1388 (8th Cir.1995); *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1210 n. 5 (8th Cir.1977). The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction.

■ It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its residents. Therefore, the fourth factor weighs in favor of the exercise of personal jurisdiction. *See Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir.1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents).

### 5. CONVENIENCE OF THE PARTIES

Finally, the McLaughlins contend that litigating this case in North Dakota will cause them an "enormous personal burden." The McLaughlins currently reside in Cambodia. They contend that most of the fact witnesses also live outside of North Dakota. The Eighth Circuit has recognized that a plaintiff is normally entitled to choose the forum in which to litigate a case. *Northrup King Co. v. Compania Productora Semillas Algodoneras,*

51 F.3d 1383, 1389 (8th Cir.1995). The Court understands that many of the potential fact witnesses are located in distant locations including California, Guatemala, and Cambodia. However, all parties and witnesses to this dispute are inconvenienced regardless of the location of the trial. This factor does not favor either party.

Based on the McLaughlins' contacts with North Dakota and the totality of the circumstances, the Court finds that exercising jurisdiction over James McLaughlin and Roberta McLaughlin comports with due process. *See Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1390 (8th Cir.1997). The exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. An application of the "effects test" as derived from *Calder v. Jones* in the context of Internet communications is appropriate and warranted

### B. *INSUFFICIENCY OF PROCESS*

The McLaughlins also seek dismissal under Rule 12(b)(4) and (5) of the Federal Rules of Civil Procedure for insufficiency of process and insufficiency of service of process.[4] They contend the "Plaintiffs' attempt to effectuate service of the summons and Complaint on defendant James McLaughlin was ineffective as to both parties." James McLaughlin attested that

although service has been attempted on different occasions, he has never been personally served with a summons. *See* Declaration of James McLaughlin, ¶ 4. The McLaughlins contend that defendant Roberta McLaughlin has never been personally served with a summons or complaint, nor have the Plaintiffs ever attempted such service. *See* Declaration of Roberta McLaughlin, ¶ 2–3. The legitimacy of the affidavit provided to the Court is also contested.

Atkinson contends there has been proper service as to both James McLaughlin and Roberta McLaughlin. On July 20, 2004, Atkinson filed affidavits of service for both named defendants. The affidavits establish that James McLaughlin was served on June 5, 2004, and Roberta McLaughlin was served on July 1, 2004. On October, 25, 2004, Atkinson filed a "Supplemental Affidavit of Personal Service" written by a Cambodian process server that provides a detailed account of the attempts made to serve the McLaughlins:

> On June 5, 2004, I went to Maryknoll House, located at # 31, Street 306, Sangkat Boeng–Keng–Kang–I, Khan Chamkarmon, Phnom Penh, and met with James McLaughlin. I gave James McLaughlin a copy of the Summons and Complaint and he read the documents, but refused to sign for them or keep them. James McLaughlin told me that

---

**4.** The distinction between Rule 12(b)(4) and 12(b)(5) is not always clear, nor always observed. The difference between the two rules has been explained as follows:

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode

> of delivery or lack of delivery of the summons and complaint.

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353, pp. 334–35 (3d Ed.2004). Due to difficulties that arise when trying to distinguish the two rules "[s]everal courts have ... treated a combination of the two motions as proper procedure". As stated by the Eighth Circuit, "[t]he distinction between the two insufficiencies is often blurred, and it is appropriate to present and analyze service under both rules." *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 884 n. 2 (8th Cir.1996).

he would not receive the summons before he contacted his attorney in the United States. James McLaughlin did write down the address of the Plaintiff and said he was going to send that to his attorney. Because James McLaughlin would not sign or keep the documents, I put the documents in his post box.

On June 29, 2004, I went to Maryknoll House, located at #31, Street 306, Sangkat Boeng–Keng–Kang–I, Khan Chamkarmon, Phnom Penh, and attempted to meet with Roberta McLaughlin, but she was not there. The staff at the Maryknoll house refused to give me her whereabouts, but did give me her mobile phone number (012.249.719). I telephoned Roberta McLaughlin to arrange a meeting time. I met with James and Roberta McLaughlin on July 1, 2004 in front of Maryknoll house and gave Roberta McLaughlin the summons and complaint. Roberta McLaughlin did not sign the documents.

Supplemental Affidavit of Personal Service, ¶¶ 4–6 (Docket No. 36).[5]

"Dismissal is not invariably required where service is ineffective: under such circumstances the district court has discretion to either dismiss the action, or quash service but retain the case." *Marshall v. Warwick*, 155 F.3d 1027, 1032 (8th Cir. 1998) (citing *Haley v. Simmons*, 529 F.2d 78, 78 (8th Cir.1976)). The McLaughlins request that the Court dismiss the case as a result of the alleged invalid service.

Rule 4(m) of the Federal Rules of Civil Procedure sets the standard for timely service of a summons and complaint in a civil action at 120 days after the filing of the complaint. However, by its own terms, Rule 4(m) "does not apply to service in a foreign country." Fed.R.Civ.P. 4(m). Instead, Rule 4(f) of the Federal Rules of Civil Procedure establishes how service of process may be effected upon individuals in foreign countries. The rule provides that service may be carried out by any internationally agreed means (the Hague Convention) reasonably calculated to give notice or, if there is no internationally agreed means of service, then service can be performed in any way that is reasonably calculated to give notice in the manner prescribed by the law of the foreign country for service or by personal service unless personal service is prohibited by the law of the foreign country. Fed.R.Civ.P. 4(f).

The McLaughlins were residing in Cambodia at the time of service. According to the pleadings, Cambodia is not a signatory of the Hague Convention. Therefore, Rule 4(f) mandates that service must be carried out in a manner that is prescribed by Cambodian law or by personal service, if not prohibited by Cambodian law. According to the Supplemental Affidavit, the law of Cambodia allows for personal service of process and no signature is required by the recipient to effectuate service. *See* Supplemental Affidavit of Personal Service, ¶ 3 (Docket No. 36). The McLaughlins have provided no evidence to the contrary.

The McLaughlins initially contested the validity of the affidavit of service filed with the Court. They allege the affidavit does not properly identify the server, contains no notary signature, no declaration that

---

**5.** Atkinson originally filed a Supplemental Affidavit of Service on September 24, 2004. (Docket No. 30). However, that affidavit contained an inconsistency regarding the date of service for Roberta McLaughlin. That affidavit stated that Roberta was served on July 2, 2004, instead of July 1, 2004, as provided in the original affidavit of service filed with the Court on July 20, 2004. Atkinson filed the second supplemental affidavit to alleviate any confusion.

the foregoing is true or correct, and no subscribing language. Rule 4(*l*) governs proof of service. It reads in relevant part:

> Proof of service in a place not within any judicial district of the United States shall, if effected under paragraph (1) of subdivision (f), be made pursuant to the applicable treaty or convention, and shall, if effected under paragraph (2) or (3) thereof, include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court. Failure to make proof of service does not affect the validity of the service.

Fed.R.Civ.P. 4(*l*). The Court has reviewed the Supplemental Affidavit of Service, and finds there is sufficient proof of service to satisfy the requirements of Rule 4 of the Federal Rules of Civil Procedure.

■ The Court also finds there is proper service of process under Rule 4(f) as to both James McLaughlin and Roberta McLaughlin. At this stage in the proceedings the plaintiffs need only establish a prima facie case of service of process. *Northrup King Co. v. Compania Productora Semillas Algodoneras*, 51 F.3d 1383, 1387 (8th Cir.1995). The affidavit submitted by Atkinson sets forth sufficient facts to support a finding of personal service.

### C. *FAILURE TO PROSECUTE*

Finally, the McLaughlins request that this Court dismiss the action with prejudice for failure to prosecute. It is well-established that "[t]he Federal Rules of Civil Procedure permit dismissal with prejudice '[f]or failure of a plaintiff to prosecute or to comply with these rules or any order of court.'" *Hunt v. City of Minneapolis, Minnesota*, 203 F.3d 524, 527 (8th Cir.2000) (quoting Fed.R.Civ.P. 41(b)); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). However, the Eighth Circuit has recognized that dismissal with prejudice is an extreme sanction that should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay. *Hunt*, 203 F.3d 524, 527. "Even where the facts might support dismissal with prejudice, this 'ultimate sanction ... should be used only when lesser sanctions prove futile.'" *Id.* (quoting *Rodgers v. Curators of the Univ. of Missouri*, 135 F.3d 1216, 1222 (8th Cir.1998)). "A district court should weigh its need to advance its burdened docket against the consequence of irrevocably extinguishing the litigant's claim and consider whether a less sever sanction could remedy the effect of the litigant's transgressions on the court and the resulting prejudice to the opposing party." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir.1997).

■ The McLaughlins seek dismissal under Rule 41(b) due to the amount of time it took Atkinson to serve the summons and complaint. Atkinson filed this action on July 28, 2003. On January 8, 2004, Magistrate Judge Dwight C.H. Kautzmann requested that Atkinson demonstrate good cause as to why the McLaughlins had not yet been served. *See* Order dated January 9, 2004 (Docket No. 3). Atkinson filed a timely response stating that he had been "unable to physically locate the defendants." *See* Plaintiffs Response to Order (Docket No. 4). On January 15, 2004, the Court granted an extension until February 26, 2004, to serve the McLaughlins.

On February 26, 2004, Atkinson requested an additional 30 days to effectuate service. *See* Plaintiffs Request Not to Dismiss Action (Docket No. 6). The Magistrate Judge granted an additional 30 days stating that "it is apparent that Plaintiffs are working toward obtaining service." *See* Order dated March 4, 2004 (Docket No. 7). The Court set the new deadline at March 26, 2004.

On March 23, 2004, counsel for Atkinson informed the Court that the summons and complaint were in the hands of a Cambodian process server but more time was needed to complete service. On April 16, 2004, the Court requested additional information as to the whereabouts of the McLaughlins. Atkinson responded and informed the Court the McLaughlins were in Cambodia. On May 3, 2004, the Court granted an extension until June 2, 2004 to effectuate service.

Upon retaining new counsel, Atkinson requested additional time. On June 4, 2004, the Court granted another extension to July 2.2004. On that date, Atkinson filed a motion requesting an additional 30 days. *See* Plaintiffs Motion to Extend Deadline to File Proof of Service of Summons and Complaint (Docket No. 9). In that motion, Atkinson indicated that James McLaughlin had been served on June 5, 2004, but more time was needed to complete service on Roberta McLaughlin. In a supplemental brief filed on July 9, 2004, Atkinson informed the Court that Roberta McLaughlin had been served on July 1, 2004.

It is evident from the record that this matter has lingered as a result of numerous extensions. However, each extension granted by the Court was based upon a good faith showing by Atkinson that more time was needed to effectuate service. A dismissal of the action under Rule 41(b) for failure to prosecute would be inappropriate under the circumstances. The Court granted several extensions and Atkinson made reasonable efforts to comply. There is no evidence of a pattern of intentional delay. The McLaughlins contend the delay has caused them prejudice due to the loss of critical evidence. However, they point to no specific evidence that has been lost due to the increased time for service, nor is the Court convinced that the delay alone justifies dismissal with prejudice under Rule 41(b). The Court in its discretion finds that a dismissal under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute is unwarranted.

## III. *CONCLUSION*

In summary, the Court finds that Atkinson's claims arise out of the McLaughlins' contacts with North Dakota via the Internet and establish personal jurisdiction. The exercise of personal jurisdiction over the McLaughlins based on such contacts does not offend due process. An application of the "effects test" derived from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), in the context of Internet activity, is appropriate and warranted. The exercise of personal jurisdiction is proper because of the foreseeable "effects" of the McLaughlins' Internet communications in North Dakota. It is clear that the McLaughlins' Internet communications were expressly targeted at, and directed to, the forum state of North Dakota. The Web site at issue directly targeted North Dakota, and specifically North Dakota residents Patrick Atkinson and the God's Child Project. There is simply no question that the focus of the Web site was directed uniquely toward North Dakota, Atkinson, and the God's Child Project.

The Court also finds there was proper service of process on the McLaughlins. Further, the Court finds that dismissal for failure to prosecute is unwarranted under the circumstances. For the reasons outlined above, the Defendants' Motion to Dismiss (Docket No. 19) is **DENIED**. The Plaintiffs' request for oral argument is denied as moot. (Docket No. 33).

**IT IS SO ORDERED.**